**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CR-20074-JEM**

**UNITED STATES OF AMERICA**

**v.**

**STEVE MANTILLA,**

**Defendant.**

_____/

**UNITED STATES OF AMERICA'S RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The Defendant, Steve Mantilla, claims that the firearm and ammunition seized from a plastic bag at the scene of his arrest were "obtained as a result of an unlawful search." (ECF No. 18 at 1). Mantilla avers that "there was no probable cause that [he] committed a crime" and so the arresting officer had no authority to conduct a search incident to arrest. (*Id.* at 2). Mantilla is mistaken. There was ample probable cause for law enforcement to arrest Mantilla for obstructing a city sidewalk—a misdemeanor punishable by jail time. Moreover, even if the arresting officer lacked probable cause, the search was still legal because Mantilla abandoned his property when he insisted that the bag did not belong to him.

**FACTUAL BACKGROUND**

On July 5, 2024, Officer Rigoberto Hernandez of the City of Miami Police Department ("Miami PD") was conducting a routine patrol of a high-crime area when he observed Mantilla sitting in a lounge chair in the middle of a sidewalk. Mantilla had a clear plastic bag next to him, and Officer Hernandez saw Mantilla reach into this bag. As demonstrated below, Mantilla and his lounge chair took up most of the sidewalk.



Upon approaching Mantilla, Officer Hernandez immediately recognized him since Mantilla had been trespassed from the adjacent property a few weeks prior. Officer Hernandez told Mantilla that he was not allowed to block the sidewalk. The officer then searched Mantilla's person, placed Mantilla in handcuffs, and told Mantilla that he was not under arrest and was merely being detained.[1] Officer Hernandez then grabbed the plastic bag next to Mantilla, which contained a pair of sweatpants. Mantilla told Officer Hernandez "that ain't my shit," "the pants and shit ain't mine," "those pants ain't mine," and "none of that shit mine." Officer Hernandez began searching the bag and the sweatpants therein. Officer Hernandez found a firearm loaded with eight rounds of ammunition in a pants pocket. The firearm had previously been reported stolen. Mantilla was subsequently arrested and charged in state court for being a felon in possession of a firearm, trespassing, and obstructing the sidewalk.

---

[1] The Court does not need to decide when Officer Hernandez effectuated Mantilla's arrest. As discussed below, suppression is not warranted even if the Court assumes that Mantilla was placed under arrest from the moment Officer Hernandez approached Mantilla.

## LEGAL STANDARD

"A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). "A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture[.]" *Id.* Suppression is not warranted unless the defendant proves, by a preponderance of the evidence, that a constitutional violation occurred. *See United States v. Sigouin*, 494 F. Supp. 3d 1252, 1261 (S.D. Fla. 2019); *see also United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) ("The individual challenging the search bears the burdens of proof and persuasion.").

The "ultimate touchstone" of the Fourth Amendment is "reasonableness," but, in the absence of a warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014). "It is well settled that a search incident to a lawful arrest" is one of these traditional exceptions. *United States v. Robinson*, 414 U.S. 218, 224 (1973). Because "the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to arrest requires no additional justification." *United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002) (citing *Robinson*, 414 U.S. at 235). This exception applies where: (1) "the search connect[s] to or arise[s] out of [an] arrest"; and (2) the search is limited "to the person of the arrestee or an area they control." *United States v. Pugh*, 90 F.4th 1318, 1328 (11th Cir. 2024). The Supreme Court has defined "control" as "'the area from within which [the arrestee] might gain possession of a weapon or destructible evidence.' . . . If there is no possibility that an arrestee could reach into the area that law enforcement officers [searched] . . . the rule does not apply." *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

**ARGUMENT AND ANALYSIS**

The search incident to arrest exception clearly applies here. Officer Hernandez saw Mantilla sitting in a chair that blocked a public sidewalk. This conduct violated a municipal ordinance which, under Florida law, is a misdemeanor that carries jail time. Since Mantilla committed a misdemeanor in Officer Hernandez's presence, he had probable cause to lawfully arrest Mantilla and conduct a search incident to arrest. Alternatively, the Court does not need to decide the search incident to arrest issue because Mantilla abandoned the plastic bag containing the firearm and thus waived his ability to challenge law enforcement's decision to search the bag.

First, Mantilla committed a misdemeanor offense in Officer Hernandez's presence, so Officer Hernandez had probable cause to arrest Mantilla and could search any objects within Mantilla's "immediate control." *See Gant*, 556 U.S. at 339. The City of Miami's Code of Ordinances makes it "unlawful for any person" to "plac[e] an object or objects on a street, sidewalk or public right-of-way in the city, to cause a condition of obstruction or blockage of a street, sidewalk or public right-of-way so as to obstruct free passage over, on or along said street, sidewalk or public right-of-way." City of Miami Code of Ordinances § 54-2(c)(2) (2024). An "obstruction" is defined broadly in the municipal code. *See id.* § 54-2(b)(1) ("An 'obstruction' within the meaning of this section shall be construed to mean to so occupy the sidewalk, street or public right-of-way that the free use and enjoyment thereof by the public is, in any way interrupted or interfered with, or the free ingress or egress to or from any building fronting on any public right-of-way is impaired.").

Although Section 54-2 of the City of Miami's Code of Ordinances does not provide a specific penalty for violations, the "general penalty" for "violating the provisions of any sections of this Code . . . where no other penalty is prescribed" is a maximum fine of $500 and/or a term of

imprisonment "for not more than 60 days[.]" *Id.* § 1-13. Violations of ordinances are "prosecuted in the same manner as misdemeanors are prosecuted." Fla. Stat. § 125.69(1).[2] Under this statutory scheme, a Florida law enforcement officer may arrest a person for violating a municipal ordinance so long as the violation occurred in the presence of that officer. *See* Fla. Stat. § 901.15(1) ("A law enforcement officer may arrest a person without a warrant when . . . [t]he person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer."). Because Florida law treats violations of municipal ordinances as misdemeanor offenses, the search incident to arrest exception is satisfied so long as law enforcement had probable cause to effectuate the arrest. *See United States v. Graham*, 123 F.4th 1197, 1239–40 (11th Cir. 2024); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").[3]

Officer Hernandez clearly had probable cause to arrest Mantilla for violating § 54-2(c)(2). The officer saw Mantilla sitting in a chair that took up most of the space on a public sidewalk. By sitting in this chair, Mantilla "plac[ed] an object" that "obstruct[ed] free passage over, on or along"

---

[2] Although Section 125.69 expressly refers to "county ordinances," Florida courts have clarified that a "violation of a city ordinance is treated as misdemeanor[.]" *Peterson v. State*, 578 So. 2d 749, 750 (Fla. 2d DCA 1991); *see also* Fla. Stat. § 162.22 ("The governing body of a municipality may designate the enforcement methods and penalties to be imposed for the violation of ordinances adopted by the municipality. These enforcement methods may include, but are not limited to, the issuance of a citation, a summons, or a notice to appear in county court or arrest for violation of municipal ordinances as provided for in chapter 901.").

[3] Although Mantilla committed the municipal violation in Officer Hernandez's presence, it is worth mentioning that the Eleventh Circuit recently held that "the Fourth Amendment does not contain an in-the-presence requirement for all warrantless misdemeanor arrests." *United States v. Gonzalez*, 107 F.4th 1304, 1310 (11th Cir. 2024). Thus, Mantilla's arrest complied with both the Fourth Amendment and Florida law.

the sidewalk. City of Miami Code of Ordinances § 54-2(c)(2).[4] Since Mantilla's conduct plainly fell within the scope and language of § 54-2(c)(2), Officer Hernandez had probable cause to arrest Mantilla as, when "considering the totality of the circumstances and viewed from the perspective of a reasonable officer, [there was] a probability or substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (internal quotation marks and citation omitted); *see also, e.g.*, *Graham*, 123 F.4th at 1240 (affirming search incident to arrest where "the officers had probable cause to arrest Mr. Jones for driving an unregistered vehicle[,]" a second-degree misdemeanor, "in violation of Florida law").

Armed with probable cause, Officer Hernandez was then allowed to search the plastic bag next to Mantilla. After all, the bag was not only on the ground next to Mantilla but Officer Hernandez saw Mantilla reach into this same bag. The bag was clearly within Mantilla's "immediate control." *See, e.g.*, *United States v. Jean*, 636 F. App'x 767, 769 (11th Cir. 2016) ("We have found that searches of wallets or bags on or near the arrestee are valid searches incident to arrest under a variety of factual circumstances." (citing cases)); *United States v. Burns*, No. 03-CR-20387, 2003 WL 27384301, at *10 (S.D. Fla. Nov. 17, 2003) ("In the case at bar, the search

---

[4] Mantilla argues in his Motion that he could not have violated this ordinance "because he did not refuse to obey a request by a law enforcement officer to move on[.]" (ECF No. 18 at 2). But this requirement only applies to violations of § 54-2(c)(1), which prohibits standing, loitering, walking, sitting, lying, or camping on a public thoroughfare "after a request by a law enforcement officer to move on so as to cease blocking or obstructing the free passage thereon." City of Miami Code of Ordinances § 54-2(c)(1). Section 54-2(c)(2) (which penalizes "placing an object or objects" on a public thoroughfare) does not contain this language, so refusing to obey a law enforcement officer's order to move is not an element of that offense. To the extent Officer Hernandez may have <u>intended</u> to arrest Mantilla for violating § 54-2(c)(1), this intent is irrelevant because there was still probable cause to arrest Mantilla under § 54-2(c)(2). *See Land v. Sheriff of Jackson Cnty., Fla.*, 85 F.4th 1121, 1127 (11th Cir. 2023) ("[O]fficers conducting warrantless arrests do not violate the Fourth Amendment so long as probable cause existed to arrest the suspect for some crime, even if it was not the crime the officer thought or said had occurred." (internal quotation marks omitted)).

and seizure of both the gun and the paper bag were conducted immediately following the arrest of the Defendant and the other individual within the enclosure. In addition, both the gun and the paper bag were within the immediate area of the arrest. Therefore, the seizure of these items was incident to a lawful arrest and was reasonable within the meaning of the Fourth Amendment.").

Second, even if the Court finds that the search incident to arrest exception does not apply, suppression is not warranted because Mantilla abandoned any possessory interest he might have had in the bag. While "an individual enjoys a reasonable expectation of privacy in personal luggage[,]" a person "who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police." *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001). The "critical inquiry" to determine abandonment is whether "the person prejudiced by the search voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994) (citation modified). "Abandonment is primarily a question of intent, and may be inferred from words spoken, acts done and objective facts." *United States v. Pirolli*, 673 F.2d 1200, 1204 (11th Cir. 1982) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (en banc)). The Government bears the burden of proving that an item was abandoned. *See Cofield*, 272 F.3d at 1306.

Mantilla repeatedly and unequivocally told Officer Hernandez (no less than four times) that the bag, and all of its contents, "ain't mine." The Eleventh Circuit has held that this kind of disclaimer—where a defendant explicitly says that an item does not belong to him—constitutes abandonment. For example, in *United States v. Cofield*, a defendant who was holding two bags "denied that the bags belong to him" after law enforcement approached and asked if a narcotics-

7

detecting dog could search the bags. 272 F.3d at 1307. "To confirm Cofield's denial of ownership, the officers asked Cofield if the bags belonged to him and Cofield responded, 'No, those are not my bags.'" *Id.* The Eleventh Circuit held that, under these circumstances, "Cofield abandoned the bags and the subsequent search was constitutional." *Id.*; *see also, e.g.*, *Pirolli*, 673 F.2d at 1204 ("[A]fter Bachman brought the three bags back to the car where Pirolli was being held, he said: 'Look what I found.' Pirolli replied: 'I never saw them before in my life.' Any contention by Pirolli that these bags were not abandoned, under these circumstances, would be frivolous."); *United States v. Witten*, 649 F. App'x 880, 885 (11th Cir. 2016) ("When an individual relinquishes possession and disclaims ownership of a piece of property such as an article of luggage, she loses any expectation of privacy in that property.").

The Government submits that the facts of this case are analogous to *Cofield*. Mantilla told Officer Hernandez multiple times (and in no uncertain terms) that the bag and pants inside did not belong to him. Mantilla had an opportunity to assert a possessory interest in the bag, but he declined to do so. As a result, the bag was considered abandoned, Officer Hernandez was entitled to search it, and Mantilla lost his ability to challenge the constitutionality of that search.

[SPACE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

Officer Hernandez searched the plastic bag next to Mantilla pursuant to a valid search incident to arrest. In any event, Mantilla is also unable to challenge the validity of that search because he abandoned the bag and its contents. Thus, for the foregoing reasons, the Court should **DENY** Mantilla's motion to suppress.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:    */s/ Cole Press*
        COLE PRESS
        Assistant United States Attorney
        Florida Bar No. 1018396
        99 N.E. 4th Street
        Miami, Florida 33132
        Telephone: (305) 961-9162
        E-mail: coleman.press@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on June 25, 2026, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.

<u>/s/ *Cole Press*</u>
Cole Press
Assistant United States Attorney